UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Topek, LLC,
     Plaintiff

     v.                                Case No. 12-cv-494-SM
                                        Opinion No. 2014 DNH 060
W.H. Silverstein, Inc.,
     Defendant

**O R D E R**

Topek, LLC, brings this action against W.H. Silverstein,
Inc. for trademark infringement, unfair competition, and false
designation of origin under the Lanham Act.  It also brings state
common law and statutory claims for unfair competition and
deceptive trade practices, over which it asks the court to
exercise supplemental jurisdiction.  It seeks compensatory
damages, as well as declaratory and injunctive relief.  In
response, Silverstein has filed counterclaims for false
advertising under the Lanham Act and unfair competition under New
Hampshire's Consumer Protection Act.


Pending before the court are the following motions: Topek's
Motion to Amend the First Amended Complaint (document no. 32);
Silverstein's Motion for Judgment on the Pleadings as to
Previously Settled or Determined Claims (document no. 22);
Silverstein's Motion for Partial Summary Judgment (document no.

33); and Silverstein's Motion for Preliminary Injunction
(document no. 31).

As a preliminary matter, the court addresses Topek's motion
to amend its complaint.  Such motions are liberally granted in
the absence of undue prejudice to opposing parties, unless they
are likely to result in undue delay or are the product of bad
faith.  See generally Fed. R. Civ. P. 15(a).  Silverstein's
objection fails to identify grounds warranting denial of Topek's
motion.  Accordingly, for the foregoing reasons, as well as those
set forth in Topek's memoranda (document nos. 32 and 55), the
motion to amend the amended complaint is granted.

**Standard of Review**

A motion for judgment on the pleadings is subject to the
same standard of review applicable to a motion to dismiss under
Federal Rule of Civil Procedure 12(b)(6).  See Portugues-Santana
v. Rekomdiv Int'l, Inc., 725 F.3d 17, 25 (1st Cir. 2013).
Accordingly, the court must accept as true all well-pleaded facts
in Topek's complaint and indulge all reasonable inferences in
Topek's favor.  See SEC v. Tambone, 597 F.3d 436, 441 (1st Cir.
2010).  To survive Silverstein's motion, the complaint must
allege each of the essential elements of a viable cause of action
and "contain sufficient factual matter, accepted as true, to

2

state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

The ground on which Silverstein moves for judgment on the pleadings - res judicata - is an affirmative defense. <u>See</u> Fed. R. Civ. P. 8(c)(1). And, as this court (Laplante, J.) recently noted:

> To grant a motion for judgment on the pleadings based on an affirmative defense, the facts establishing that defense must: (1) be definitively ascertainable from the complaint and other allowable sources of information, and (2) suffice to establish the affirmative defense with certitude. In ruling on such a motion, the court may consider not only the complaint itself, but also documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice. This includes documents from prior state court adjudications.

<u>Bosonetto v. Town of Richmond</u>, 2013 WL 2404023, 2013 DNH 080 (D.N.H. May 31, 2013) (citations and internal punctuation omitted).

## Background

Accepting the allegations in Topek's Second Amended Complaint (document no. 32-1) as true, the relevant facts are as follows. Yankee Barn Homes ("Yankee") is a nationally-recognized builder of custom-designed post and beam homes. It was founded

in Massachusetts in 1969 and, in 1972, it relocated to Grantham, New Hampshire.  In 2011, it ran into financial difficulty and was unable to pay its creditors, including its primary lender: Woodsville Guaranty Savings Bank (the "Bank").  At the time, Yankee owed the Bank approximately $2 million.  The Bank's loans to Yankee were secured by liens on, and security interests in, virtually all of Yankee's assets, including its intellectual property, trade names, design templates, and goodwill.  The Bank also held mortgage deeds to Yankee's real property.

Shortly after it began experiencing financial problems, Yankee was contacted by Silverstein, which had recently purchased another local company that specializes in the construction of timber frame homes.  In March of 2011, Yankee and Silverstein signed a "letter of intent," essentially ceding control of Yankee to Silverstein.  But, when the Bank learned of the parties' proposal, it refused to approve it (as, apparently, was its right under the security instruments signed by Yankee).  Nevertheless, Yankee and Silverstein moved ahead with their "deal" and entered into an "Asset Purchase Agreement."  Silverstein then began integrating its operations with those of Yankee and began holding itself out to the public as Yankee Barn Homes.

The Bank was not amused.  Despite the Bank's efforts to obtain the return of what it considered misappropriated assets, Silverstein continued to represent that it had purchased Yankee and all of its assets.  Because the Bank believed Silverstein's actions were impairing the value of its security, it filed suit against Silverstein in state court.  Then, in September of 2011, Yankee appears to have recognized that it could not follow through on its "deal" with Silverstein absent Bank approval. Accordingly, Yankee conveyed to the Bank all (or virtually all) of its assets.  <u>See</u> Bill of Sale from Yankee to the Bank (document no. 32-9).  Two days later, the Bank conveyed those same assets - including all of Yankee's general intangibles such as "copyrights, trademarks, and trade names, including the name Yankee Barn Homes," as well as its existing inventory, machinery, manufacturing equipment, customer lists, computer records, phone numbers, and ICC certifications - to Topek.  <u>See</u> Bill of Sale from the Bank to Topek (document no. 32-3).  And, shortly thereafter, Topek re-opened Yankee's Grantham facility and rehired many of Yankee's former employees.

By November of 2011, Topek concluded that despite a state court order directing Silverstein to stop doing so, Silverstein continued to exercise (or attempt to exercise) control over former assets of Yankee and, in so doing, was interfering with

5

Topek's ownership of those assets.  Accordingly, Topek intervened in ongoing state court suits brought by the Bank against Silverstein (collectively, the "280 Litigation").

Subsequently, as part of that ongoing 280 Litigation, the state court held two days of evidentiary hearings on Topek's motion for preliminary injunction.  The court then made the following factual findings:

> On September 28, 2011, Yankee Barn Homes ("YBH") conveyed all of its real and personal property to Woodsville Guaranty Savings Bank ("the Bank"). Thereafter, on September 30, 2011, the Bank conveyed all former YBH fixed assets to Topek.  Such fixed assets include inventory, machinery and equipment, and general intangibles.  While the parties dispute whether certain assets constitute former YBH property, the parties agree for purposes of this motion that the Bank sold to Topek any interest it held in YBH fixed assets.
>
> Since September 2011, Topek has managed the Yankee Barn Homes's manufacturing facility in Grantham, N.H.  Topek alleges, and the Court finds, that notwithstanding the sale of YBH assets to Topek, [Silverstein] has retained the phone numbers from the former Yankee Barn Homes and has represented itself to outside parties as "Yankee Barn Homes."  Topek also claims, and the Court finds, that [Silverstein] has retained YBH property, has used YBH's ICC certifications, and has recently interfered with Topek's Facebook page by claiming copyright infringement of photos used by Topek of Yankee Barn Homes taken by Shane Godfrey.  On November 21, 2011, Topek intervened in the actions pending between the Bank and WHS, Inc., and filed the present petition.

Order on Intervenor's Petition for Preliminary Injunction (document no. 1-1) at 2 (citations and internal punctuation

omitted).  Turning to Topek's request for injunctive relief, the
court entered the following findings:

> The Court finds that Topek has demonstrated it is
> entitled to injunctive relief.  First, Topek has
> demonstrated it will suffer irreparable harm if the
> injunction is not issued.  Topek has offered evidence,
> unrebutted by [Silverstein], that [Silverstein] has
> used YBH phone numbers to "promote continuity" between
> YBH and [Silverstein].  Topek has also offered
> evidence, again unrebutted by [Silverstein], that
> [Silverstein] has retained certain YBH assets, used YBH
> ICC certifications, and claimed exclusive copyrights of
> YBH photos.  The public is likely to confuse Topek -
> the owner of YBH assets - with [Silverstein], its
> competitor.  The cumulative effect of [Silverstein's]
> conduct, then, is a loss of potential business to
> Topek.  The Court finds that this loss constitutes
> irreparable harm.

Id. at 4.  The court then enjoined Silverstein "from (A)
representing to anyone that [Silverstein] has purchased Yankee
Barn Homes or has any authority to act on behalf of Yankee Barn
Homes; and (B) from using or exerting any control over property
owned by Yankee Barn Homes, including, but not limited to, the
Yankee Barn Home website."  Order of Grafton County Superior
Court (Jan. 5, 2012) (document no. 32-6).  The court also ordered
Silverstein to turn over to Topek all of Yankee's property then
in its possession, including "customer lists, computer programs,
prints/plans or drawings."

Four days later Silverstein registered, with the State of
New Hampshire, a new company named "Yankee Post & Beam" - a name

Topek claims is deceptively similar to Yankee Barn Homes. Silverstein also began operating a website that, according to Topek, was a virtual copy of the Yankee website (albeit with a different URL).

Eventually, after being found in contempt of an earlier court order and being required to pay nearly $30,000 in costs and attorney's fees to the Bank, Silverstein settled the Bank's claims against it. But, Topek's claims against Silverstein remained unresolved. Topek then learned that Silverstein had registered trademarks with the United States Patent and Trademark Office, as well as the New Hampshire Secretary of State, that Topek believed were confusingly similar to those it purchased from Yankee. Accordingly, it sought to amend its complaint in the pending state court action against Silverstein to include trademark infringement and unfair competition claims under both state and federal law. When that motion to amend was denied, Topek filed a separate state court action against Silverstein advancing those claims (the "440 Litigation").

Shortly thereafter, Silverstein and Topek settled their disputes in the underlying 280 Litigation. Importantly, their settlement agreement specifically provided that:

8

> 9.    This settlement agreement does not affect the
>        parties' claims in Topek, LLC v. W.H.
>        Silverstein, Inc., No. 215-2013-cv-440
>        pending in this court [i.e., the 440
>        Litigation].
>
> 10.   All other claims in this case, except as set
>        forth above, shall be dismissed with
>        prejudice.

Settlement Stipulation (document no. 15-4) (emphasis supplied).
Two days later, Silverstein removed the 440 Litigation to this
court.  Silverstein now claims that, despite language in the
settlement agreement seemingly to the contrary, that agreement
(along with the state court's order denying Topek's request to
amend its complaint in the 280 Litigation) bars the majority of
claims Topek seeks to pursue in this case.[1]

## Discussion

I.   Silverstein's Motion for Judgment on the Pleadings.

Silverstein moves for judgment on the pleadings as to counts
one through seven of the Second Amended Complaint, asserting that
those claims are barred by the doctrine of res judicata and the
rule against so-called "claim splitting."  Alternatively, it
argues that the court should decline to exercise jurisdiction

---

[1]    In its Second Amended Complaint, Topek dropped claims
relating to Silverstein's alleged improper website optimization,
as well as a claim that Silverstein violated various state court
orders.  Accordingly, the court need not address whether those
claims would have been precluded by the parties' settlement
agreement in the 280 Litigation.

9

over Topek's trademark infringement claims (or, at a minimum,

stay this proceeding) because similar claims are already pending

before the Trademark Trial and Appeal Board ("TTAB").

Under New Hampshire law, the doctrine of res judicata

precludes the relitigation of:

> matters actually decided, and matters that could have
> been litigated, in an earlier action between the same
> parties for the same cause of action.  For the doctrine
> to apply, three elements must be met: (1) the parties
> must be the same or in privity with one another; (2)
> the same cause of action must be before the court in
> both instances; and (3) a final judgment on the merits
> must have been rendered in the first action.

Brooks v. Trustees of Dartmouth College, 161 N.H. 685, 690

(2011).  It is the third element - a final judgment on the merits

- that is at issue here.

According to Silverstein, when the state court denied

Topek's motion to amend its complaint (to add the trademark and

unfair competition claims that now form the basis of this action)

and Topek did not appeal that ruling, the order became final, on

the merits, and was with prejudice.  See Silverstein's Memorandum

(document no. 22-1) at 13.  And, says Silverstein, under the

doctrine of res judicata, that ruling serves to preclude Topek

from litigating in this forum any claims that were the subject of

the motion to amend.  In support of that position, Silverstein

points to a recent decision of the Court of Appeals for the First

Circuit, in which the court noted:

> It is axiomatic that claim preclusion doctrine requires
> a party to live with its strategic choices.  Those
> strategic choices include whether to attempt to amend a
> complaint and whether to appeal a denial of such an
> attempt.  When a party chooses to move for leave to
> amend its complaint and then not to appeal denial of
> that motion, the party is not entitled to a second
> opportunity in a later action to litigate the claim
> that the party sought to add.  Instead, the party's
> recourse is to appeal, not to start a new action.

Hatch v. Trail King Indus., 699 F.3d 38, 45 (1st Cir. 2012)

(citations and internal punctuation omitted) (emphasis supplied).

There is, however, a critical distinction between the facts in

this case and those in the Hatch case.  Following the denial of

plaintiff's motion to amend the complaint, the Hatch case

proceeded to a final decision on the merits (a jury verdict) - a

decision that was affirmed on appeal.  See Id. at 47.


Here, however, the was no judicial resolution of the claims

between Topek and Silverstein, and Topek never had the

opportunity (or the need) to appeal the trial court's denial of

its motion to amend.  Rather, the parties resolved their disputes

short of any judicial declaration of their rights and

responsibilities, and the parties have offered nothing in this

record suggesting that the settlement agreement was entered as an

order of the court, a consent decree, or the like.

Of course, there are circumstances in which a settlement agreement can have a preclusive effect on a party's ability to pursue subsequent litigation on the same or related claims.  For example, in discussing the doctrine of res judicata as applied to a consent judgment, the court of appeals for this circuit has observed that:

> When a dispute of law exists between parties to a case and they agree to a settlement of that dispute and <u>entry of a judgment with prejudice based on that settlement</u>, then <u>the terms of that judgment</u> in relation to that legal issue are subject to res judicata principles.  A judgment that is entered with prejudice under the terms of a settlement, whether by stipulated dismissal, a consent judgment, or a confession of judgment, is not subject to collateral attack by a party or a person in privity, and it bars a second suit on the same claim or cause of action.  Such a judgment has the force of res judicata until further order of that or a higher court modifying that consent judgment.

<u>Langton v. Hogan</u>, 71 F.3d 930, 935 (1st Cir. 1995) (citations omitted) (emphasis supplied).  <u>See also</u> <u>Bews v. Town of Carroll</u>, 2009 WL 1664064, 2009 DNH 083 (D.N.H. June 15, 2009) (noting that the court "must examine the language of the stipulation [of dismissal] to discern whether the parties intended the document to be a final resolution of all matters that could have been litigated in the enforcement action.").

As noted above, however, this case presents a different fact pattern.  Silverstein might well be heard to assert that a

settlement agreement precludes any further litigation of the claims actually resolved by that agreement.  But it cannot credibly argue that the settlement agreement in this case precludes further litigation of claims that the parties specifically and expressly agreed were <u>unaffected</u> by the their settlement.  <u>See generally</u> Settlement Stipulation at paras. 9 and 10 (providing that the settlement agreement "<u>does not affect</u> the parties' claims in [the litigation presently pending in this court]" and noting that all other claims between the parties, "<u>except as set forth above</u>, shall be dismissed with prejudice.").

Silverstein plainly understood (and certainly objectively manifested its intent) that the parties' settlement agreement would <u>not</u> have any preclusive effect on the claims Topek is presently pursing in this court.  And, it is quite clear that under the circumstances, Silverstein is equitably estopped from asserting that the agreement should be understood as barring the "unaffected" claims on res judicata grounds.  <u>See, e.g.</u>, <u>Ramirez-Carlo v. United States</u>, 496 F.3d 41, 49-50 (1st Cir. 2007).  <u>See generally</u> Restatement (Second) of Torts, § 894 (1979) ("Equitable Estoppel as a Defense").

As for Silverstein's assertion that the court should either decline to exercise jurisdiction over Topek's claims or, in the

alternative, stay this proceeding pending the outcome of related proceedings before the Trademark Trial and Appeal Board, the court declines that invitation.  Silverstein has failed to demonstrate that adoption of either alternative would be appropriate in this case.  See, e.g., Goya Foods, Inc. v. Tropicana Prods., Inc., 846 F.2d 848 (2d Cir. 1988) (discussing the primary jurisdiction doctrine in the field of trademark law and explaining why the existence of an action before the TTAB does not warrant a stay of related judicial proceedings).  See also Calista Enterprises Ltd. v. Tenza Trading Ltd., 2013 WL 6080184 (D. Or. Nov. 19, 2013) (denying a motion to stay a federal action pending resolution of a related Petition for Cancellation before the TTAB); Exclusive Supplements, Inc. v. Abdelqawad, 2013 WL 160275 (W.D. Pa. Jan. 15, 2013) (same).


II.  Silverstein's Motion for Partial Summary Judgment.

     Next, Silverstein moves for summary judgment on Topek's claim of copyright infringement (count 8 of the Second Amended Complaint).  In that count, Topek alleges that it owns, and Silverstein has infringed, copyrighted "Wall and Roof Shop Drawings and Details."  Silverstein responds that Topek is not the owner of the claimed copyright and, therefore, asserts that it is entitled to judgment as a matter of law on that infringement claim.  More specifically, Silverstein claims that

14

Topek's predecessor in title (the Bank) never acquired title to
the disputed copyrighted material.  It necessarily follows, says
Silverstein, that Topek could not have acquired title to that
work from the Bank:

> The Bank to Topek Bill of Sale has a summary recital
> conveying "all copyrights . . . held by Yankee Barn
> Homes, Inc.," but does not list the copyright at issue
> here.
>
> The Bank obtained the enumerated assets of Yankee Barn
> Homes, Inc. in a Bill of Sale dated September 28, 2011,
> conveying to the Bank "registered copyrights and
> unregistered copyrighted materials, all as further
> identified on Exhibit A-1 attached hereto and made a
> part hereof."  That Exhibit A-1 identifies some 24
> registered copyrights and 34 unregistered copyrights,
> but not the purported copyright at issue here.

Silverstein's Memorandum (document no. 33-1) at 3.


For its part, Topek seems to acknowledge that the
copyrighted material at issue in this case was not specifically
listed in the conveyance from Yankee to the Bank, or the
conveyance from the Bank to Topek.  But, says Topek, the plain
and unambiguous intent of all interested parties was to convey
all of Yankee's intellectual property - including all copyrighted
works - from Yankee to the Bank, and then from the Bank to Topek.
The court is inclined to agree.  See generally Bill of Sale from
Yankee to the Bank (document no. 32-9) and Bill of Sale from the
Bank to Topek (document no. 32-3).  In the absence of dispositive

15

contrary evidence from Silverstein, whether Topek actually took title to the copyrighted material at issue is a genuinely disputed material fact, likely to turn on contract principles. Consequently, Silverstein's motion for judgment as a matter of law must necessarily be denied.

III. <u>Silverstein's Motion for Preliminary Injunction</u>.

Finally, Silverstein advances two counterclaims against Topek: a false advertising claim under the Lanham Act, and a false advertising/unfair competition claim under New Hampshire's Consumer Protection Act.  In short, Silverstein alleges that while Topek may have purchased the assets formerly owned by Yankee Barn Homes, Topek did not buy the company (it did not acquire its stock) and, therefore, Topek is not the "successor in interest" to Yankee Barn Homes.  Accordingly, says Silverstein, Topek cannot lawfully hold itself out to the public as "Yankee Barn Homes," or say that it has been in business since 1969, or claim that it has built award-winning homes throughout the country, or display pictures of homes that it never actually built, or display testimonials from clients who purchased their homes from what Silverstein considers to be the "true" Yankee Barn Homes.  <u>See</u> Silverstein's Memorandum (document no. 31-1) at 9 ("[T]he truth is that Topek has <u>no connection whatsoever to</u>

16

[Yankee Barn Homes].  These advertising statements are false, misleading and deliberately deceptive.") (emphasis in original).

Silverstein seeks a preliminary injunction that would, inter alia, prohibit Topek from: representing that it has been in business since 1969; stating that it has "any relationship to Yankee Barn Homes, Inc."; and making any reference in its advertising to Yankee Barn Homes, Inc., the awards won by Yankee Barn Homes, Inc., the founders of that company, or the homes built by that company.  See Silverstein's Memorandum (document no. 31-1) at 14.  Topek objects.

In support of its request for preliminary injunctive relief, Silverstein relies upon this court's opinion in Paper Thermometer Co. v. Murray, 2012 WL 194369, 2012 DNH 017 (D.N.H. Jan. 23, 2012).  That case is, however, factually distinguishable and provides no support for Silverstein's position.  Paper Thermometer involved a defendant who purchased plaintiff's goods, re-labeled them, represented to the public that it (rather than plaintiff) had engineered and manufactured them, and then sold those products as its own.  The defendant in that case had not purchased the assets of the plaintiff corporation; it did not own the intellectual property of the plaintiff corporation; it did not have the right to use trademarks registered by the plaintiff

corporation; it was not employing plaintiff's former workforce to manufacture the goods in question; and it had no legal justification for its challenged practices.  Little more need be said.  As presented, Silverstein's argument is unpersuasive.

For its part, Topek has embarked on an entirely different track.  It alleges that its purchase of virtually all of the assets of Yankee Barn Homes resulted in a "de facto merger" of the companies, thereby making Topek the "successor-in-interest" to Yankee Barn Homes and vesting it with authority to hold itself out to the public as Yankee Barn Homes.  In support of that position, it cites several cases in which creditors sought to impose liability upon an entity that purchased the assets of a debtor corporation.  In those cases, creditors claimed the purchasing entity became the "successor" to the debtor corporation and, therefore, was legally responsible for its financial obligations.  See, e.g., Kleen Laundry & Dry Cleaning Servs. v. Total Waste Mgmt., 817 F. Supp. 225 (D.N.H. 1993); Bielagus v. EMRE of New Hampshire Corp, 149 N.H. 635 (2003). Topek seems to argue by analogy that if the conditions are met to hold Topek liable for the financial obligations of Yankee Barn Homes, Inc. (under what is known as the "substantial continuation theory"), there must have been a "de facto merger" and Topek

18

necessarily has the legal authority to hold itself out to the public as Yankee Barn Homes.

While Topek's argument is clever and, perhaps, even superficially appealing, it is not terribly persuasive either. As Silverstein points out, Topek has failed to point to any authority embracing such a theory in factual circumstances similar to these.  Rather, the cases on which Topek relies simply address the circumstances under which the purchaser of a debtor corporation's assets (rather than its stock) can yet be held accountable for the debtor corporation's liabilities.  Not a single case cited by Topek addresses the question actually presented here: whether Topek has the legal authority to hold itself out to the public as "Yankee Barn Homes."  Or, stated slightly differently, whether Topek has the right to hold itself out to the public as Yankee Barn Homes to draw on its (apparently) noble and storied history, and to claim to manufacture the same high-quality homes today that Yankee Barn produced for many years.

While neither party has directly addressed the relevant legal and factual issues, a leading and respected treatise undermines Silverstein's contention that Topek has engaged in unfair, deceptive, and unlawful trade practices by, for example,

representing to the public that Yankee Barn Homes remains in business, as it has since 1969.

It is patently misleading to advertise a false date of establishment or to suggest, without warrant, that the reputation of a newly established business is well-known to the public.  Reference to an early date of establishment suggests that the business is an experienced, firmly established, successful and reliable concern.  <u>Therefore, the dispositive question in any case is whether the business enterprise, as a unit, including all its human elements and its corporeal and incorporeal values, has continued, substantially unchanged, since its inception</u>. . . ..

It is difficult to determine what changes in business status break the continuity of the founder's reputation.  <u>It is not interrupted by every minor change in the nature of the business</u>: e.g., its development from a small craft shop to a big industrial unit; a change in its legal form, e.g., from individual ownership to a partnership or corporation; a change of firm name or trademark; a change of ownership; expansion to other lines of business; bankruptcy; or the transfer of the old business to a new corporation.  <u>The continuity of a business is often evidenced by retention of the old firm name or trademark</u>, even if it contained the name of an individual owner.  Such names normally lose their personal significance, and metamorphose into business designations.

Such continuity, however, <u>may be broken</u> by the removal of the business to another country, by its conversion to an entirely different product line, or by its division into several parts transferred to different successors.

3 R. Callman, <u>Callman on Unfair Competition, Trademarks & Monopolies</u>, § 5:35 at 189-90 (Louis Altman, ed., 4th ed. 1981 & 2013 supp.) (footnotes omitted) (emphasis supplied).

Silverstein does not allege that any of the factors suggestive of a break in business continuity are present in this case.  On the other hand, several of the factors that suggest unbroken business continuity are obviously present in this case. As noted above, Topek purchased all (or virtually all) of the tangible and intangible assets of Yankee Barn Homes, Inc.  The list of those assets is lengthy and it includes, for example, a number of second-level Internet domain names (e.g., "yankeebarnhomes.com," "yankeebarnhomes.org," and "yankeebarnhomes.us.com") and numerous registered copyrights (e.g., "Yankee Barn Homes dormer details," and "Yankee Barn Homes horsebarn/garage options").  Topek also purchased Yankee's registered trademarks and service marks (including, for example, "Yankee Barn"), as well as the goodwill and reputation for quality associated with those marks.  See 15 U.S.C. § 1060(a)(2) ("In any assignment authorized by this section, it shall not be necessary to include the good will of the business connected with the use of and symbolized by any other mark used in the business or by the name or style under which the business is conducted."). See generally 1 J. McCarthy, McCarthy on Trademarks and Unfair Competition, §§ 2:3-2.10 (4th ed. 2011); Restatement (Third) of Unfair Competition, §§ 1-9 (1995) ("Deceptive Marketing"). Additionally, Topek is operating the very same manufacturing facility in Grantham, New Hampshire, from which Yankee Barn Homes

has operated since 1972.  And, it has rehired much of Yankee's former workforce.

Given what appears to be the controlling law on this issue, and in light of all that Topek purchased from Yankee Barn Homes (albeit through the Bank), a challenge to Topek's right to hold itself out to the public as the Yankee Barn business that moved to Grantham in 1972 and has, for many years, manufactured unique and highly regarded post and beam homes, would seem unlikely to succeed.  But neither party has directly (or adequately) addressed the relevant and dispositive legal and factual issues. Silverstein bears the burden here.  And, it has failed to demonstrate that Topek's alleged conduct violates either the Lanham Act or New Hampshire's Consumer Protection Act. Consequently, it has not shown that it is likely to prevail on the merits of its counterclaims so its motion for preliminary injunction is denied.

**Conclusion**

For the foregoing reasons, the court rules as follows on the pending motions:

1.  Topek's Motion to Amend the First Amended Complaint (document no. 32) is granted.

2.  Silverstein's Motion for Judgment on the Pleadings (document no. 22) is denied.

3.   Silverstein's Motion for Preliminary
     Injunction (document no. 31) is denied.

4.   Silverstein's Motion for Summary Judgment on
     Count 8 of the Second Amended Complaint
     (document no. 33) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 20, 2014

cc:  Gary E. Lambert, Esq.
     W. E. Whittington, Esq.